LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Hang D. Le, Esq. (SBN 293450)
hlee@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA  91367
Tel:    (818) 347-3333
Fax:    (818) 347-4118

LAW OFFICE OF JOHN FATTAHI
John Fattahi, Esq. (SBN 247625)
jfattahi@gmail.com
21250 Hawthorne Blvd., Suite 500
Torrance, CA 90503
Tel:    (424) 999-5579

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH FRIER, individually and as successor in interest to MICHAEL FRIER, deceased; and LAURA CASAS FRIER, individually and as successor in interest to MICHAEL FRIER, deceased,<br><br>Plaintiffs,<br>vs.<br><br>STATE OF CALIFORNIA; FALCON CRITICAL CARE TRANSPORT, LLC; OFFICER BARNHART (BADGE # 23032); VIRGIL FARRIS; CYRUS GHORBANI; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 5:26-cv-01367-EKL<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

## 1.  JURISDICTION AND SERVICE

This case was removed from state court. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States, including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

All parties named in this action have been served.

## 2.  FACTS

### A.  Plaintiffs

This is a wrongful death case arising out of the alleged violation of Decedent Michael Frier's ("Decedent") civil rights and negligent conduct towards Decedent while Decedent was a medical patient being transported to a medical facility. The Plaintiffs are Decedent's parents, Kenneth Frier and Laura Casas Frier ("Plaintiffs"). The Defendants are the State of California and California Highway Patrol Officer Jeremy Barnhard ("State Defendants") and Falcon Critical Care Transport, Virgil Farris and Cyrus Ghorbani ("Falcon Defendants") (collectively "Defendants").

On December 19, 2025, Defendants Farris and Ghorbani were dispatched as Emergency Medical Technicians ("EMTs") for Falcon Critical Care Transport to Stanford Hospital, located at 500 Pasteur Drive in Palo Alto, California to transport Decedent to San Jose Behavioral Health Center on a 5150 hold. Plaintiffs allege, on information and belief, that Farris and Ghorbani were informed that Decedent was being held on a 5150 hold, had a medical history of mental disorder, was gravely disabled, was a flight risk, and exhibited strange/inexplicable behavior. Plaintiffs further allege that despite having this information, Farris and Ghorbani recklessly failed to use appropriate restraints on Decedent when they loaded him onto the gurney and into the ambulance. Plaintiffs further allege that Farris and Ghorbani also recklessly failed to secure and lock the rear door of the ambulance prior to transport.

Plaintiffs allege, on information and belief, that during the transport to San Jose Behavioral Health Center, Decedent exhibited acute symptoms of mental or emotional distress. Farris and Ghorbani failed to deploy and use appropriate restraints on Decedent, thereby allowing Decedent to access and exit the rear door of the ambulance. Plaintiffs further allege,  on information and belief, outside of the ambulance, Farris and Ghorbani restrained Decedent in a prone position on the ground on the side of the Interstate 280 freeway. Plaintiffs further allege,  decedent was held chest-down while substantial weight was placed on Decedent's back, interfering with Decedent's ability to breathe. Plaintiffs further allege,  Farris and Ghorbani held Decedent in this position for a significant period of time, causing Decedent severe medical distress, including respiratory distress.

Plaintiffs allege, on information and belief, that Farris and Ghorbani failed to properly monitor Decedent's breathing and vitals with they held in chest-down with weight applied to his body. Plaintiffs further allege, Farris and Ghorbani also failed to place Decedent in a recovery position after Decedent was in severe medical distress.

Plaintiffs further allege, that at some point during the prone restraint of Decedent, Farris and Ghorbani called 9-1-1 to request assistance and Defendant Barnhart and Doe Officers responded to the scene. Plaintiffs further allege,  on information and belief, Barnhart and Doe Officers participated in and contributed to the prone restraint of Decedent, including directing Farris and Ghorbani to restrain Decedent to facilitate the handcuffing and arrest of Decedent, despite it being apparent on their arrival that Decedent was completely under control, posed no threat, and was experiencing medical distress. Plaintiffs further allege,  on information and belief, Farris and Ghorbani helped facilitate and assist in the handcuffing of Decedent to take Decedent into custody.

Plaintiffs allege, on information and belief, after spending a significant amount of time restrained in the prone position, Decedent was sat up and restrained while still in handcuffs. Plaintiffs further allege,  Farris, Ghorbani, Barnhart, and Doe Officers failed to properly monitor Decedent's vitals and breathing while Decedent was being restrained in a seated position. Additionally, Plaintiffs allege Farris, Ghorbani, Barnhart and Doe Officers failed to provide

medical care and treatment, including CPR, to Decedent despite it being apparent that Decedent was experiencing medical distress, including respiratory distress.

Plaintiffs allege, Decedent died as a result of this incident. The subsequent autopsy revealed that Decedent had sustained petechial hemorrhages—objective evidence of asphyxiation.

## B. State Defendants

On December 19, 2024, at approximately 1643 hours, Golden Gate Division Communications Center (GGCC) broadcasted an active 415 California Penal Code (PC)-Disturbing the Peace in progress. Additionally, GGCC related the call involved a critical care Emergency Medical Technician (EMT) vehicle and EMT personnel Cyrus Ghorbani and Virgil Farris fighting with a patient that was being transported in the vicinity of Interstate 280 southbound, north of the El Monte Avenue offramp in Mountain View, California.

CHP Officers Jeremy Barnhart and Miguel Duque responded and arrived at the scene at approximately 1654 hours. Both officers' vehicles were equipped with Mobile Video/Audio Recording Systems (MVARS) (i.e., dash-cams) which captured the incident. Upon arrival, Officer Barnhart observed an ambulance and two males on the freeway shoulder holding down a third male, later identified as Michael David Frier, who was lying on his back. Officer Duque asked EMTs Ghorbani and Farris what had happened, and they related Mr. Frier was "freaking out" and had jumped out of the ambulance. EMTs Ghorbani and Farris stated they tackled Mr. Frier to prevent him from going onto the freeway.

Officer Barnhart asked EMTs Ghorbani and Farris if they wanted Mr. Frier handcuffed, which they did. Officer Barnhart handcuffed Mr. Frier's left arm and subsequently handcuffed Mr. Frier's right arm, with both arms behind Mr. Frier's back. After Mr. Frier was handcuffed, the officers placed him into the seated position and leaned him against Officer Barnhart's knee to keep him upright. Officers Barnhart and Duque never restrained Mr. Frier in a prone position.

At approximately 1657 hours, Officer Duque called GGCC and requested an ambulance to transport Mr. Frier due to his immediate need for a higher level of medical care. While waiting for the requested ambulance to arrive, EMTs Ghorbani and Farris checked on Mr. Frier, who remained sitting upright. While EMTs Ghorbani and Farris were attending to Mr. Frier, Officer

Duque asked if they wanted the handcuffs removed to administer care to Mr. Frier. EMTs Ghorbani and Farris related they wanted the handcuffs to remain on because they did not want Mr. Frier to "freak out" again.

At approximately 1714 hours, Officer Duque radioed GGCC and requested the incoming ambulance respond "Code 3." At approximately 1720 hours, Santa Clara County Fire Department and Palo Alto Fire Department personnel arrived on scene; at which time the officers removed the handcuffs from Mr. Frier for the Fire Department personnel to begin compressions for CPR on him. At approximately 1738 hours, Mr. Frier was transported from the scene by EMS personnel.

State Defendants admit that Officers Barnhart and Duque were employees of the California Highway Patrol and were acting in the course and scope of employment and under color of state law.

**C. Falcon Defendants**

Falcon Defendants have filed a responsive pleading to each and every factual allegation made against them in their Answer to the Complaint.  Further, Falcon Defendants disputes plaintiffs' allegation that the Falcon Defendants were acting under the color of State law at the time of the accident.  Falcon Defendants also dispute plaintiffs negligence claims against them.

**3. LEGAL ISSUES**

**A. State Defendants**

(1) Whether the involved officers reasonably detained and arrested the decedent under the Fourth Amendment and state law;

(2) Whether the involved officers used reasonable force during the incident under the Fourth Amendment and state law;

(3) Whether the involved officers reasonably summoned medical care for decedent under the Fourth Amendment;

(4) Whether any supervisory defendants: (a) directed the involved officers in the acts or failures to act that deprived the decedent or plaintiffs of their constitutional rights; (b) set in motion a series of acts by the involved officers or knowingly refused to terminate a series of acts by the involved officers that the supervisor knew or reasonably should have

known would cause the involved officers to deprive the decedent or plaintiffs of these rights; (c) knew the involved officers were engaging in these acts and knew or reasonably should have known that the involved officers' conduct would deprive the decedent or plaintiffs of these rights and failed to act to prevent the involved officers from engaging in such conduct; (d) disregarded the known or obvious consequence that a particular training deficiency or omission would cause the involved officers to violate the decedent's or plaintiffs' constitutional rights and that deficiency or omission actually caused the involved officers to deprive the decedent or plaintiffs of these rights; or (e) engaged in conduct that showed a reckless or callous indifference to the deprivation by involved officers of the rights of others. And whether, the conduct of the supervisory defendant(s) was so closely related to the deprivation of the decedent's or plaintiffs' rights as to be the moving force that caused the ultimate injury;

(5) The nature, quality, and depth of plaintiffs' relationships with decedent, and whether the involved officers interfered with plaintiffs' right to a familial relationship with the decedent;

(6) Whether the involved officers and/or supervisors are entitled to qualified immunity;

(7) Whether the involved officers were negligent;

(8) Whether plaintiffs' claim for negligent training and supervision against State Defendants should be dismissed because it is an invalid claim.

(9) Whether the involved officers violated the Bane Act;

(10) Whether the involved officers' conduct resulted from conduct that was malicious, oppressive, or in reckless disregard of decedent's or plaintiffs' rights;

(11) Whether officers are immune from liability for plaintiffs' state law claims under state law immunities;

(12) The extent of decedent's comparative fault;

(13) The extent of Falcon Defendants' comparative fault;

(14) The nature and extent of the injuries proximately caused by the actions of the involved officers; and

(15) The nature and extent of plaintiffs' damages.

B. Falcon Defendants

1.  Whether the Falcon Defendants were negligent;

2.  Whether Falcon Defendants were acting under color of state law.

3.  The nature, quality, and depth of plaintiffs' relationships with decedent, and whether the involved Falcon Defendants interfered with plaintiffs' right to a familial relationship with the decedent;

4.  The extent of decedent's comparative fault;

5.  The extent of States Defendants' comparative fault;

6.  The nature and extent of the injuries proximately caused by the actions of the involved officers; and

7.  The nature and extent of plaintiffs' damages.

8.  Whether the Falcon Defendants conduct was malicious, oppressive, or in reckless disregard.

4.  **MOTIONS**

Plaintiffs do not currently do not intend on filing any motions but reserve the right to do so. Plaintiffs also request two weeks to oppose any dispositive motion.

State Defendants and Falcon Defendants will file a motion for summary judgment, or, in the alternative, for partial summary judgment. If the dispositive motion is denied, State Defendants and Falcon Defendants intend to file a motion to bifurcate punitive damages.

5.  **AMENDMENT OF PLEADINGS**

Plaintiffs do not contemplate amending the pleadings at this time.

6.  **EVIDENCE PRESERVATION**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"). The parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action.

7.  **DISCLOSURES**

The Parties have not yet exchanged Initial Disclosures. The Parties agree to exchange Initial Disclosures by June 3, 2026.

**8.  DISCOVERY**

The parties have not yet conducted discovery. Plaintiffs intend to promptly begin discovery. State Defendants and Falcon Defendants will propound written discovery and take the depositions of plaintiffs and percipient witnesses. State Defendants also anticipate expert disclosures and discovery. The parties currently do not see the need for any limitations or modifications to the discovery rules but reserve the right to request modification should the need arise. The parties have stipulated to a protective order regarding discovery. The parties propose their respective discovery dates in paragraph 15.

**9.  CLASS ACTIONS**

Not applicable.

**10. RELATED CASES**

The parties are not aware of any related cases.

**11. RELIEF**

Plaintiffs seek survival damages and compensatory damages under federal and state law, including damages for Decedent's loss of life, loss of enjoyment of life, and pre-death pain and suffering. Plaintiffs also seek wrongful death damages under federal and state law, including for the Plaintiffs' loss of the Decedent's love, comfort, companionship, support, guidance, and training. Plaintiffs also seek punitive damages, costs, and attorneys' fees.

State Defendants and the Falcon Defendants deny Plaintiffs are entitled to the relief requested.

**12. SETTLEMENT AND ADR**

No ADR efforts have been made to date. The parties agree that discovery needs to be conducted before any settlement discussions can take place. Plaintiffs and Falcon Defendants have discussed the possibility of a settlement conference with a magistrate judge or private mediation. State Defendants prefer court-sponsored mediation. The parties have agreed to further discuss ADR at the CMC. The parties suggest an ADR deadline of October 8, 2026.

**13. OTHER REFERENCES**

Not applicable.

**14. NARROWING OF ISSUES**

State Defendants and Falcon Defendants will file a motion for summary judgment, or, in the alternative, for partial summary judgment. If the dispositive motion is denied, State Defendants and Falcon Defendants will file a motion to bifurcate punitive damages.

**15. SCHEDULING**

The parties proposed the following case deadlines:

| Case Stage | Deadline |
| --- | --- |
| Deadline to Request Leave to Amend Pleadings | August 5, 2026 |
| Deadline to Complete Initial ADR Session | October 8, 2026 |
| Further Case Management Conference | January 13, 2027 |
| Close of Fact Discovery | March 10, 2027 |
| Initial Expert Disclosures | April 10, 2027 |
| Rebuttal Expert Disclosures | May 7, 2027 |
| Close of Expert Discovery | July 10, 2027 |
| Close of Briefing on Summary Judgment and *Daubert* | September18, 2027 |
| Hearing on Summary Judgment and *Daubert* | October 15, 2027 |
| Joint Pretrial Statement Deadline | January 19, 2028 |
| Pretrial Conference | February 2, 2028 |
| Trial | March 6, 2028 |

**16. TRIAL**

This case will be tried by a jury. The trial is expected to last 5-7 court days.

//

**17. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

None.

**18. PROFESSIONAL CONDUCT**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

DATED:  May 27, 2026            LAW OFFICES OF DALE K. GALIPO
                                LAW OFFICE OF JOHN FATTAHI


                                By */s/ Dale K. Galipo*
                                   Dale K. Galipo
                                   Hang D. Le
                                   John C. Fattahi
                                   Attorneys for Plaintiff


DATED:  May 27, 2026            ROB BONTA
                                Attorney General of California


                                By */s/ Donna M. Dean*
                                   DONNA M. DEAN
                                   Supervising Deputy Attorney General
                                   *Attorneys for Defendants State of California, acing by and through California Highway Patrol and Jeremy Barnhart*

DATED:  May 27, 2026                    **MATHENY SEARS LINKERT & JAIME, LLP**


By _/s/ Jeffrey E. Levine_
JEFFREY E. LEVINE, ESQ. Attorney for
Defendants, FALCON CRITICAL CARE
TRANSPORT, LLL, VIRGIL FARRIS, and
CYRUS GHORBANI